**In re DATO.**

**FARR v. DATO et al.**

**No. 6607.**

Circuit Court of Appeals, Seventh Circuit.

Nov. 8, 1938.

Matthias Concannon and William H Dillon, both of Chicago, Ill., for appellant.

Ralph R. Hawxhurst and Bernard Hoban, both of Chicago, Ill., for appellees.

Before EVANS, MAJOR and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

The order appealed from is that of February 23, 1938, entered in a proceeding under Section 74 of the Bankruptcy Act, 11 U.S.C.A. § 202, in which appellee Harry Dubia had been appointed trustee. In such order, appellant's motion to withdraw his petition filed March 20, 1935, was denied and the court confirmed the referee's report entered December 20, 1935 denying the petition of appellant filed September 25, 1935, in which petitioner prayed for permission to institute and prosecute proceedings in some court of appropriate jurisdiction and for leave to make the debtor and his trustee parties thereto. In other words, the error assigned is the refusal of the court to permit a withdrawal of the petition of March 20, 1935, and a denial of the prayer of the petition of September 25, 1935.

The petition of March 20, 1935, in substance, alleges that the debtor holds record title to certain real estate in his name, and also holds in his name certain certificates of beneficial interest in land trusts of which the Chicago Title and Trust Company is Trustee, but that the purchase price of said real estate and certificates of beneficial interest had been furnished by the Edith Rockefeller McCormick Trust, of which petitioner is sole trustee; that the debtor holds said real estate and said certificates of beneficial interest in trust for the Edith Rockefeller McCormick Trust, and has no other interest therein, and prays that it might be decreed and established that a trust in said real estate and beneficial interests exist in favor of said Edith Rockefeller McCormick Trust, and that the debtor and Harry Dubia, then custodian, be directed to convey said real estate and assign said beneficial interests to petitioner.

April 4, 1935, two answers were filed to this petition, one by Dato, the debtor, and the other by Dubia, as trustee. Such answers were similar in their contents and allege in substance that the debtor performed various acts and duties for the Edith Rockefeller McCormick Trust and that the trustees of the McCormick Trust entered into certain contracts agreeing to indemnify the debtor from liability for his acts for the McCormick Trust, and averred that there were obligations outstanding against the debtor arising out of his acts for the McCormick Trust, and that until these obligations were paid the court was without discretion and power to order the trustee or the debtor to convey the real estate or assign the beneficial interest described in the petition.

The answer of the debtor specifically avers:

"Further answering, this respondent claims an equitable lien on all of the property described in the petition of the petitioner herein which is held in the name of this respondent, and in which this respondent has a beneficial interest, and prays that all of said property referred to may be charged with an equitable lien by reason of the matters and things herein stated." and concludes:

"Further answering, this respondent denies that the petitioner herein is entitled to the relief, or any part thereof, in said petition demanded."

The answer of the trustee alleges:

"Further answering this respondent avers that he claims an equitable lien against all of the properties described in the said petition, together with all the rents, issues and profits therefrom, not only for the services performed by the Debtor in behalf of the petitioner and his predecessors, but also to protect him against any and all manner of action, cause and causes of action, suits, sums of money, accounts, covenants, contracts, promises, representations, damages, losses, judgments, claims and demands whatsoever, in law or in equity, arising or growing out of any and all acts, things or deeds done, omitted to be done or suffered to be done by the said Debtor for and in behalf of the petitioner and his predecessors." and concludes thus:

"Wherefore, this respondent prays that the said petition be dismissed at the petitioner's costs."

The answer of the debtor is not verified.

At this point a reference to some of the authorities dealing with the right of a plaintiff to withdraw or dismiss its suit seems pertinent. One of the leading authorities is that of Ex parte Skinner & Eddy Corp., 265 U.S. 86, 44 S.Ct. 446, 68 L. Ed. 912, in which many authorities are cited and discussed, and where on page 93, 44 S. Ct. on page 447, it is said:

"It is ordinarily the undisputed right of a plaintiff to dismiss a bill in equity before final hearing.

\*    \*    \*    \*    \*    \*    \*

"The right to dismiss, if it exists, is absolute. It does not depend on the reasons which the plaintiff offers for his action. The fact that he may not have disclosed all his reasons, or may not have given the real one, cannot affect his right.

"The usual ground for denying a complainant in equity the right to dismiss his bill without prejudice at his own costs is that the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action. Having been put to the trouble of getting his counter case properly pleaded and ready, he may insist that the cause proceed to a decree."

In Jones v. Securities & Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L. Ed. 1015, the rule is announced on page 19, 56 S.Ct. on page 659, as follows:

"The general rule is settled for the federal tribunals that a plaintiff possesses the unqualified right to dismiss his complaint at law or his bill in equity unless some plain legal prejudice will result to the defendant other than the mere prospect of a second litigation upon the subject matter. Pullman's Palace Car Co. v. Transportation Co., 171 U.S. 138, 145, 146, 18 S.Ct. 808, 43 L.Ed. 108."

Other cases in which the rule is discussed and applied are found in the footnote.[1]

■ It seems plain, therefore, that appellant was entitled to withdraw his petition unless appellees were in a position to demand, on the answers as filed, affirmative relief, and that they would be prejudiced if the cause was litigated in some other court. It is appellees' contention that the answers constitute a counterclaim in which

affirmative relief is sought. The parties are in agreement that Supreme Court Equity Rule 30, 28 U.S.C.A. following section 723, in force at the time these proceedings were pending in the District Court was applicable to bankruptcy proceedings and that by reason of this rule, a counterclaim is properly pleaded in an answer. In this connection we think it material to point out that the first paragraph of this rule has reference merely to a defense in bar rather than one seeking affirmative relief. The second paragraph[2] has reference to a counterclaim involving the subject matter of the suit, and in effect, requires that the statement of such counterclaim shall be in such form as to enable the court "to pronounce a final decree in the same suit on both the original and cross claims."

■ We think, before a pleading can be characterized as a counterclaim seeking affirmative relief, it must contain within itself the essential elements to constitute a cause of action. The rule is aptly stated in Stewart v. Gorham, 122 Iowa 669, at page 676, 98 N.W. 512, at page 515, where the court said:

"To entitle a defendant to proceed, his pleadings must state an independent cause of action, with an appropriate demand for relief. It is not material that the cause stated involves, to a greater or less extent, the subject-matter of the cause of action as stated by plaintiff in his petition, but it must contain within itself the essential elements of a cause of action. In legal effect, the defendant becomes plaintiff, and the plaintiff becomes defendant."

■ An examination of the pleadings in question convinces us that they can not be regarded as counterclaims, or as seeking affirmative relief. They evidently were not intended for such purpose. If there is any doubt that the pleader had no such intention, it is dispelled by the fact that the debtor's answer concludes by praying "that

---

[1] New York Life Insurance Co. v. Driggs, 4 Cir., 72 F.2d 833, 834; Prudential Insurance Co. of America v. Stack, 4 Cir., 60 F.2d 830, 831, 832; Scholl Manufacturing Co. v. Rodgers, 8 Cir., 51 F.2d 971, 973, 974; Deeley v. Cincinnati Art Pub. Co., 6 Cir., 23 F.2d 920, 921; In re Strickland, D.C., 167 F. 867, 868–870.

[2] "The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject

matter of the suit, and may, without cross bill, set up any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross suit, so as to enable the court to pronounce a final decree in the same suit on both the original and cross claims."

the said petition be dismissed at the petitioner's costs." This prayer can not be reconciled with any pretention that the answer seeks affirmative relief. It is in the nature of a plea in bar, set forth to defeat recovery by the petitioner. True, an equitable lien is claimed, but the language used on which any such lien might be based is general and indefinite. The amount of the alleged lien is not stated and there is no request that the amount thereof be determined or that any lien found to exist be satisfied by a sale of the property, or otherwise. It seems certain that no affirmative relief could be granted on such pleadings. If any issue was presented, and of this we have some doubt, by such pleadings, it would be whether or not petitioner was entitled to the relief sought.

The court below, erroneously, we think, concluded that appellant's asserted right to withdraw his petition was a discretionary matter. In the court's memorandum opinion, found in the record, the court stated:

"The Circuit Court of Appeals of this Circuit has not passed upon this question. In the Second Circuit, however, in Bronx Brass Foundry, Inc. v. Irving Trust Co., 76 F.2d 935, it was held that there is no such absolute right, but whether a claim filed against the bankrupt in the bankruptcy court may be withdrawn rests in the sound discretion of the court."

An examination of this case, however, discloses that it must be distinguished from the general rule for the reason that the court relied upon a rule of court existing in the jurisdiction where the cause was tried, which is quoted on page 936:

"If justice require, the Court, after issue joined, may refuse to permit the plaintiff to discontinue even though the defendant cannot have affirmative relief under the pleadings and though his only prejudice be the vexation and expense of a possible second suit upon the same cause of action."

The Bronx Case was affirmed by the Supreme Court in 297 U.S. 230, 56 S.Ct. 451, 80 L.Ed. 657, on the express ground that the court had a discretion in the matter by reason of the District Court rule. Any doubt concerning the Bronx Case is removed in Jones v. Securities & Exchange Commission, supra, where the respondent, as here, urged that discretion was vested in the court regarding the right of a litigant to withdraw its suit, and in discussing its former decision in the Bronx Case, the court, page 21, 56 S.Ct. page 660, said:

"We affirmed, holding that the general rule as stated in Ex parte Skinner & Eddy Corp., supra, had been modified by a rule of the district court which authorized the court to refuse, after issue joined, 'to permit the plaintiff to discontinue even though the defendant cannot have affirmative relief under the pleadings and though his only prejudice be the vexation and expense of a possible second suit upon the same cause of action.'"

Another case relied upon by appellees is that of Sauter v. First National Bank of Philadelphia et al., 7 Cir., 8 F.2d 121, which is an opinion by this Court. True, we held in that case that the petitioner was not, as a matter of right, entitled to withdraw. It is pointed out, however, that the defendant had put itself "in a position to demand on the pleadings an opportunity to seek affirmative relief." [Page 123.] In the Statement of Facts on page 122 is set forth the defendant's answer, wherein it may be readily seen that the pleading sought definite and certain affirmative relief. In that case the court recognized and applied the exception to the general rule as heretofore stated, but which can not be applied in the instant case on the pleadings before us for the reason that no such relief is sought. Other cases cited by appellees are distinguishable upon the same or similar grounds.

We conclude that the court erred in its refusal to permit appellant to withdraw his petition. In view of this conclusion, it is not necessary to discuss the question as to the court's jurisdiction to determine the issue presented.

While the petition was pending, heretofore discussed, to recover the real estate, appellant filed another petition under date of September 25, 1935, wherein he sought leave to proceed with an action in the State Court. The matter was submitted to the referee without an answer and without evidence, who, after hearing the arguments of counsel, entered an order under date of December 20, 1935, denying the petitioner leave to proceed in the State Court, which order was confirmed by the District Court. It is this ruling which presents the second question involved in this appeal. The allegations of appellant's petition of September 25, 1935, are summarized by the District Court in its opinion as follows: "It is alleged that Dato, as trustee of a trust estate known as the Krenn and Dato Trust as party of the first part, entered into an agreement with Edith Rockefeller McCormick.

Edwin D. Krenn and Edward A. Dato as trustees of the Edith Rockefeller McCormick Trust, as party of the second part, which provided for the purchase by the party of the second part of certain property therein described for the sum of $660,000 and in addition the assumption by parties of the second part of a balance due of $276,100 of indebtedness secured by a mortgage on said property; that there was paid by said trustees of the Edith Rockefeller McCormick Trust, under the terms of said contract, to said party of the first part a large sum of money, the exact amount being unknown to petitioner; that the said parties of the second part executed and delivered to said party of the first part their promissory note in the principal sum of $660,000, which note is in the possession of Max M. Grossman and Maurice B. Rissman as trustees under an agreement between Minnie Noon Dato and Krenn and Dato, Inc.; that the amount claimed to be due under the aforesaid agreement having been reduced to $250,452.64, the parties of the second part in said agreement, on or about May 16, 1932, executed five trust deeds, in the nature of first and second mortgages as security for such balance; that at the time of the agreement aforesaid Krenn and said Dato owned practically all of the beneficial interest in said Krenn and Dato Realty Trust and all of the shares of Krenn & Dato Inc., and had but 15 shares each out of a total of 52,350 shares of the Edith Rockefeller McCormick Realty Trust; that the value of the real estate mentioned in said agreement, at the time said agreement was entered into, did not exceed $300,000; that said Krenn and Dato Realty Trust had purchased the property some years before at a higher price and the purpose of said agreement was to unload the property on the Edith Rockefeller McCormick Trust and save the Krenn & Dato Trust from loss; that petitioner has disaffirmed, disavowed and renounced the aforesaid agreement and the five trust deeds, and that the Edith Rockefeller McCormick Trust has never received any of the consideration paid pursuant to said agreement.

"Petitioner sets out the former petition filed by him and the answer thereto and avers that to accomplish a rescission of said agreement above mentioned and a cancellation and delivery up of said note and a release of said trust deeds it will be necessary for petitioner to file a proceeding in some court and to make parties thereto persons over whom this court cannot acquire jurisdiction, viz., all persons having an interest in the notes above mentioned, the Krenn and Dato Realty Trust or its distributees, Edwin D. Krenn, Krenn & Dato, Inc., Minnie Noon Dato and others; that the Krenn & Dato Trust is not financially able to place the Edith Rockefeller Trust in status quo existing at the time of the execution of the aforesaid agreement, that said Dato and others are severally liable to the Edith Rockefeller McCormick Trust for the losses sustained by said latter trust as a consequence of said agreement."

Thus, it will be seen that appellant asserts a claim against the debtor and Krenn as co-trustees for a breach of duty as trustee of the McCormick trust, wherein they were interested in property sold to the trust at an exorbitant price. In connection with the sale of the property a note and trust deeds were given which are in the hands of third parties. Appellant seeks to set aside the sales contract, not only for the purpose of liquidating his claim against the debtor and Krenn, but also to free the McCormick trust from the note and trust deeds incurred in that purchase and now in the hands of third parties.

It is the contention of appellant that a determination of the rights of the various parties requires a plenary suit in equity to which all of the persons interested or affected may be made parties. We think there is merit in this contention. Certainly, no determination of the involved issues could be made by the District Court which would be binding as to any of the parties other than appellant and appellees. The court is lacking in jurisdiction of the res as that is in the possession of the appellant and has no authority to acquire jurisdiction of necessary parties, which, it seems to us, is essential. It is argued by appellees that the appellant should be required to liquidate his claim against the debtor for breach of trust in the bankruptcy proceeding and that for such purpose the other parties are not necessary. This contention overlooks the fact that appellant's claim involves a rescission of the sales contract and the cancellation of the note and trust deeds.[3]

---

[3] Hill v. Wilson, 5 Cir., 210 F. 200, 201; Shingleur v. Jenkins, C.C., 111 F. 452; Swan Land & Cattle Co. v. Frank, 148 U.S. 603, 610, 13 S.Ct. 691, 37 L.Ed. 577.

As stated, there was no answer filed as to the petition and no evidence taken. While the facts are dissimilar, we think what the court said in Foust v. Munson S. S. Lines, 299 U.S. 77, on page 86, 57 S.Ct. 90, on page 95, 81 L.Ed. 49, is pertinent:

"In the absence of a showing of facts sufficient to require a finding that liquidation of petitioner's claim by jury trial would encumber the reorganization proceedings, the debtor and trustees were not entitled to have the injunction continued in force against petitioner."

The court's discretion in such matter is to be exercised as was stated in this case, page 83, 57 S.Ct. page 94, "according to the particular circumstances of the case and is to be guided by considerations that under the law make for the ascertainment of what is just to the claimants, the debtor and the estate." It would appear that both the interest of appellant and appellees, and the latter no less than the former, would be best served by a determination of the complicated issues involved in a jurisdiction where all of the interested parties could be brought into court and all their interests and claims determined therein. Even if it were possible to determine the issues between appellant and appellees in the District Court, it certainly would not be practical. Why should appellant be put to the expense and effort of a law suit in the Federal Court against appellees and then another suit of the same character in the State Court against Krenn and others, when the issues as to all the parties can as well be determined in a single suit, especially when there is no showing that such a suit will jeopardize the rights or interests of appellees? The District Court recognized this situation, for in its memorandum opinion it stated:

"Other parties, also are involved, and the prosecution of a suit in the State Court may be necessary before a complete settlement of the matter may be had. But this court is interested primarily in the settlement of the Dato estate here. I see no reason for holding up the proceeding here to await the outcome of a suit in the State Court."

We think the court was in error in denying appellant's petition of September 25, 1935, and that leave should be granted to join appellees in a Court of appropriate jurisdiction.

The decree is reversed with directions to proceed in accordance with the views herein expressed.