FERDINAND H. SALES, demandante y recurrido, *v.* SAMAC MOTOR CORPORATION, demandada y recurrida; COMPAÑÍA DE FOMENTO INDUSTRIAL DE PUERTO RICO, interventora y recurrente.

Número: R-64-232      Resuelto: 17 de junio de 1965

*Juan Enrique Géigel, Guillermo Silva, Hernán G. Pesquera* y *Miguel A. Giménez Muñoz,* abogados de la recurrente; *Rodríguez Ema & Rodríguez Ramón, Rodolfo Sequeira* y *Nicolás Jiménez,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

La Samac Motor Corporation, una corporación organizada bajo las leyes de Puerto Rico, estaba integrada para el año 1960 por tres accionistas nombrados Ferdinand H. Sales, Bernard L. Shank y José Macías. Cada uno poseía la tercera parte de las acciones de dicha corporación. La misma ocupaba como arrendataria un local propiedad de la interventora Compañía de Fomento Industrial de Puerto Rico, un organismo del Gobierno de Puerto Rico. 23 L.P.R.A. sec. 274.

Para agosto de 1960 el demandante Sales vendió a la Samac Motor Corp. todas sus acciones por $15,000.00. Recibió un pronto de $1,000.00 y el remanente le sería satisfecho en cantidades mensuales. La deuda fue evidenciada por diez

pagarés y se convino que la falta de pago de uno causaría el vencimiento automático de todos. Además de esos $14,000.00, la corporación aceptó adeudar $3,756.76 a Ferdinand Sales por concepto de un préstamo.

Al vencerse el pagaré número 1 en octubre de 1960, el mismo no fue pagado y en diciembre de ese año Ferdinand Sales demandó a Samac Motor Corporation en cobro de dinero en el Tribunal Superior de Puerto Rico, Sala de San Juan y trabó embargo contra la maquinaria y demás bienes muebles de la corporación demandada, los cuales se encontraban en el edificio de la interventora y arrendadora, la Compañía de Fomento Industrial.

En 16 de marzo de 1962 Samac Motor Corporation radicó en la Corte de Quiebras en San Juan de Puerto Rico un procedimiento de arreglo (*arrangement*) bajo el Capítulo XI de la Ley Federal de Quiebras, 11 U.S.C. secs. 701 y ss., ofreciendo a sus acreedores el pago de un 20% de sus acreencias. La Compañía de Fomento Industrial radicó en dicha Corte una reclamación jurada (*proof of claim*), con categoría de reclamación con prioridad, a tenor con la Sec. 64(a)(5), 11 U.S.C. sec. 104,(1) de la propia Ley de Quiebras, por $1,466.88, suma que comprendía la renta devengada durante los últimos tres meses anteriores a la radicación del procedimiento de quiebra. La Compañía de Fomento incluyó en su reclamación en el procedimiento de quiebra solamente el importe de los últimos tres meses y no la totalidad de la deuda (doce meses, $5,867.52) porque la citada sección de la Ley de Quiebras contiene esa limitación de tres meses, dándole así preferencia a solo ese término de tres meses de renta adeudada.(2) Samac por su parte aceptó adeudar dicha renta y

---

(1) Dicha disposición es aplicable a los procedimientos de arreglo, *Securities and Exchange Commission* v. *U.S. Realty and Improvement Co.*, 310 U.S. 434 (1940); 8 Collier, *On Bankruptcy* (1964) sec. 4.12, pág. 445.

(2) La Sec. 64(a)(5) de la Ley de Quiebras, 11 U.S.C. sec. 104(a)(5), lee, en lo pertinente como sigue:

"*Debts which have priority*. (a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of

el hecho de que la misma gozaba de prioridad bajo la Ley de Quiebras. (³)

En 3 de abril de 1962 el Árbitro de Quiebras (*Referee in Bankruptcy*) emitió una orden requiriendo de Ferdinand Sales que mostrase causa por las cuales el embargo trabado por él contra los bienes muebles de Samac no debía dejarse sin efecto. Luego de comparecer Sales, el árbitro dictaminó que el embargo era válido ya que el mismo se había trabado antes de los cuatro meses anteriores a la radicación de la petición de arreglo. 11 U.S.C. sec. 107(a); 4 Collier *On Bankruptcy* (1964) sec. 67.07, pág. 88; *Yumet & Cía.* v. *Delgado*, 243 Fed. 519 (1917). Posteriormente, en 3 de mayo de 1962, el árbitro dictó una orden desestimando la petición de arreglo de Samac Motor Corp. basándose en que el embargo trabado por Sales contra Samac cubría casi la totalidad de los haberes de Samac. Dicha orden terminó el procedimiento en la Corte de Quiebras. (⁴)

---

bankrupt estates, and the order of payment, shall be . . . (5) debts owing to any person, including the United States, who by the laws of the United States is entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law: Provided, however, That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy."

(³) V. "Schedule A-1, Statement of all creditors to whom priority is secured by the Act."

(⁴) La referida orden del árbitro lee *verbatim*:

"ORDER DISMISSING PROCEEDINGS. A hearing was held before the undersigned on May 15th, 1962, at 2:00 P.M. to consider adjudication or dismissal of proceedings for failure of debtor to appear at the first meeting of creditors. On said date counsel for the debtor informed the Court that his clients were not present, wherefor he requested the continuance of the hearing.

"Upon objection from counsel for the P.R. Industrial Development Company of Puerto Rico, and in view of our order of May 3rd as to the validity of creditor Ferdinand H. Sales' attachment lien, which covers almost the totality of debtor's assets, the proceedings in the instant case are hereby DISMISSED.

"Let copy of this order be notified by mail to counsel for the debtor,

Con fecha de 28 de junio de 1962 la Compañía de Fomento radicó en el pleito seguido por Sales contra Samac Motor Corporation en el Tribunal Superior de Puerto Rico, Sala de San Juan, una Solicitud y una Demanda de Intervención. Alegó la Compañía de Fomento que conforme al Art. 1822(7) del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5192(7), ella tenía preferencia sobre los bienes de Samac embargados por Sales hasta el importe de los créditos por rentas por el período de un año ($5,867.52).[5]

El Gobierno de los Estados Unidos, por conducto del fiscal de la Corte Federal de Distrito en Puerto Rico, también interpuso una demanda de intervención reclamando $1,635.98 más intereses, por concepto de contribuciones de rentas internas federales. Finalmente, en 28 de agosto de 1964, el Tribunal Superior dictó sentencia: (1) declarando con lugar la demanda de Ferdinand Sales contra Samac Motor Corporation por $17,756.76, más intereses, costas y $1,000.00 de honorarios de abogado; (2) declarando sin lugar la demanda de intervención de la Compañía de Fomento Industrial de Puerto Rico; y (3) declarando con lugar la demanda del Gobierno de los Estados Unidos y condenando a Samac a pagar a dicho Gobierno la suma de $1,824.45, más intereses, declarando el Tribunal que dicho Gobierno tiene un grava-

---

for the P.R. Industrial Development Company of Puerto Rico, and for creditor Ferdinand H. Sales.

"San Juan, Puerto Rico, this 15th day of May, 1962.

W. H. Beckerleg

---

W. H. Beckerleg
Referee in Bankruptcy"

[5] El citado Art. 1822(7) del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5192(7), dice en lo pertinente: "Con relación a determinados bienes muebles del deudor, gozan de preferencia:

. . . . . . . .

(7) Los créditos por alquileres y rentas de un año, sobre los bienes muebles del arrendatario existentes en la finca arrendada y sobre los frutos de la misma."

men preferente para el cobro de dicha suma sobre los bienes embargados a la demandada Samac Motor Corporation. La Compañía de Fomento Industrial presentó una moción de reconsideración la cual fue declarada sin lugar por el Tribunal de instancia.

La interventora recurrente, Compañía de Fomento Industrial, señala ante nos los siguientes dos errores:

(1) "El Tribunal Superior de Puerto Rico, Sala de San Juan, incurrió en error al concluir que la desestimación de la petición de quiebra de Samac Motor Corporation por el 'Referee' de Quiebras, Honorable William H. Beckerleg, resulta ser una adjudicación en los méritos de los derechos de las partes, por lo que el embargo trabado por el demandante Ferdinand H. Sales sobre los bienes de la demandada Samac Motor Corporation, significa que Ferdinand H. Sales es un acreedor asegurado, con un crédito superior a los créditos con derecho a prioridad sobre bienes de la demandada, Samac Motor Corporación."

(2) "El Tribunal Superior de Puerto Rico, Sala de San Juan, incurrió en error al declarar sin lugar la demanda de intervención de la Compañía de Fomento Industrial de Puerto Rico."

Discutiremos ambos errores conjuntamente. Como implica el primer error señalado, el tribunal de instancia resolvió en esencia, que la orden del Árbitro de Quiebras al desestimar la petición de Samac Motor Corp. es una adjudicación en los méritos de los derechos de las partes. Como veremos más adelante, hay lenguaje en la ley que aparentemente justifica dicho fallo. Sin embargo, al examinar la ley con detenimiento y al aplicarla como estimamos que debe aplicarse llegamos a la conclusión de que el tribunal de instancia erró.

Aclaramos al comienzo que no está en controversia, ni ninguna de las partes cuestiona, la aplicación al caso de la Ley de Quiebras. La cuestión ante nos se contrae a determinar el efecto de la orden del Árbitro desestimando la petición de arreglo de la deudora, en cuanto al derecho de la interventora recurrente.

Creemos que para lograr la mayor claridad posible en la discusión de este asunto es deseable exponer el razonamiento

que llevó al tribunal de instancia a su conclusión. Dicho razonamiento puede resumirse así: La Ley de Quiebras clasifica los créditos en asegurados (*secured claims*) y generales (*general claims*). Éstos a su vez se subdividen en créditos con prioridad (*priority claims*) y créditos comunes (*common claims*). Un crédito asegurado es superior a cualquier otro. El embargo trabado por Sales le confirió a éste el *status* de un acreedor asegurado. La legislación federal sobre la materia predomina sobre la local. Las Reglas Federales de Procedimiento Civil son aplicables a los procedimientos de quiebra y conforme a lo previsto en la Regla 41(b) de las mismas la desestimación de la petición de *arrangement* radicada por Samac Motor Corporation constituye cosa juzgada. Debido a esto no pueden litigarse en los tribunales estatales los derechos de las partes aquí envueltas. Hasta aquí el resumen del pensamiento del tribunal de instancia.

En el escolio 4 de esta opinión hemos transcrito la orden del Árbitro desestimando la petición de arreglo. Como puede verse en dicha orden, fecha a 15 de mayo de 1962, se expresa que ese día se celebró una vista para considerar la aceptación o desestimación de los procedimientos, en vista de que la peticionaria no había concurrido a la primera reunión de acreedores. También se expresa que en vista de que el Árbitro había considerado válido el embargo trabado por Ferdinand Sales, el cual cubría la casi totalidad de los haberes de la peticionaria, el procedimiento se desestimaba. Lo antes dicho es la esencia de la mencionada orden del Árbitro. Tenemos que resolver si esa desestimación a la luz del derecho aplicable constituye o no una adjudicación en los méritos de los derechos de las partes.

■ La Regla 1 de las federales de procedimiento civil dispone que las mismas son aplicables a todos los pleitos civiles que se litiguen en las Cortes de Distrito federales, salvo las excepciones consignadas en la Regla 81. Ésta a su vez expresa en su apartado (a)(1) que dichas reglas no serán apli-

cables a los procedimientos de quiebra a menos que el Tribunal Supremo de los Estados Unidos disponga lo contrario. La Sec. 30 de la Ley de Quiebras, 11 U.S.C. sec. 53, facultaba a dicho Tribunal para prescribir el procedimiento en los casos de quiebra.([6]) El Tribunal Supremo federal determinó mediante su Orden General Núm. 37 que las Reglas de Procedimiento Civil para las Cortes de Distrito federales se aplicarían en los procedimientos de quiebra en tanto en cuanto dichas reglas no fuesen inconsistentes con la Ley de Quiebras o con las órdenes Generales de Quiebra. 11 U.S.C. (1964 ed.) App., pág. 2014. A dichas Reglas Federales de Procedimiento Civil tenemos, pues, que remitirnos.

La Regla 41(b) cubre lo concerniente a la desestimación involuntaria. Para el texto de dicha regla véase el escolio 7. El Tribunal sentenciador se basó en dicha Regla 41(b) y especialmente en su última oración para resolver como antes hemos expresado. Por lo que dejamos antes dicho puede verse que no abrigamos dudas de que dicha Regla 41 es aplicable a los procedimientos de quiebra. V. *Stanley* v. *Alcock*, 310 F.2d

---

([6]) Dicha Sec. 30 de la Ley de Quiebras fue derogada en 3 de octubre de 1964, pero la nueva ley le dejó dicha facultad al Tribunal Supremo y en nada varía la situación para el caso de autos. Pub. L. 88–623, sec. 3; 78 Stat. 1001; 28 U.S.C. sec. 2075.

([7]) *"Rule 41(b). Involuntary Dismissal: Effect Thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits." Según enmendada en 21 de enero de 1963, efectiva en 1ro. de julio de 1963.

17 (1962); *Industrial Credit Co.* v. *Hazen*, 222 F.2d 225 (1955); *Kleid* v. *Ruthbell Coal Co.*, 131 F.2d 372 (1942); *In re Empire Coal Sales Corp.*, 45 F.Supp. 974 (1942); *Kelso* v. *MacLaren*, 122 F.2d 867 (1941); *Perry* v. *Baumann*, 122 F.2d 409 (1941); 1 Barron and Holtzoff, *Federal Practice and Procedure* (1960) sec. 124, pág. 555. Sin embargo, ¿es correcta la aplicación literal de esa regla al caso específico que nos ocupa? Creemos que no porque este caso no cae dentro del "rationale" que informa dicha Regla 41(b). Veamos.

En primer lugar dicha regla tiene por objetivo principal propiciar la desestimación de pleitos a instancia de los demandados cuando los demandantes no son diligentes en proseguir sus causas o cuando éstos son díscolos y no cumplen con las reglas o las órdenes del tribunal. Como bien señalan Barron y Holtzoff([8]) la Regla 41(b) cubre tres situaciones: (1) desestimación cuando el demandante deja de proseguir el pleito; (2) desestimación cuando el demandante no cumple con las reglas de procedimiento o no cumple las órdenes del tribunal; y (3) desestimación cuando, luego de que el demandante haya terminado la presentación de su prueba, el demandado solicita dicha desestimación por razón de que bajo los hechos y la ley el demandante no ha demostrado tener derecho a remedio alguno. Ninguna de esas tres situaciones se da en el caso de autos. Del análisis anterior puede verse, como indican los autores citados, que la Regla 41(b) constituye un remedio disponible para los demandados. El remedio para los demandantes o peticionarios está consignado en la Regla 41(a) que trata del desistimiento (*Voluntary Dismissal*).([9])

La Regla 41(b) penaliza al demandante negligente o díscolo impidiéndole instar luego otra acción de igual naturaleza contra las mismas partes. Ésa parece ser la razón

---

([8]) Vol. 2B de su *Federal Practice and Procedure* (1961) sec. 916, págs. 134–135. V. además 5 Moore, *Federal Practice*, 2da. ed., sec. 41.11[2]; 9 *Cyclopedia of Federal Procedure*, 3ra. ed., secs. 29.13–29.16.

([9]) Barron y Holtzoff, Ibid, pág. 135.

principal para la cláusula de cosa juzgada de dicha regla. Por eso fue tan apropiada y justa la enmienda del año 1963 que dispuso que una desestimación por haberse omitido acumular una parte indispensable no operará como una adjudicación en los méritos. La justicia de esa enmienda es clara; lo contrario sería decidir una controversia sin darle a una parte su día en corte. Obviamente dicha Regla 41(b) no tiene el propósito de penalizar a los acreedores diligentes y mucho menos a los que tienen prioridad reconocida por la propia Ley de Quiebras, 11 U.S.C. sec. 104(a)(5), y que han sido diligentes como lo fue la interventora.

El razonamiento expresado en la Orden de Desestimación de la Corte de Quiebras—que desestimaba la petición de la deudora porque el embargo trabado por Ferdinand Sales cubría casi todos los haberes de la misma—no prejuzgó en ningún momento el derecho de la Compañía de Fomento Industrial ni mucho menos prejuzgó adversamente la prioridad de dicho crédito sobre el de Sales. Como hemos señalado antes, la propia Ley de Quiebras confiere prioridad al crédito por renta cuando éste la tiene por ley estatal. Éste es precisamente el caso de la interventora Compañía de Fomento. 11 U.S.C. sec. 104(a)(5); 31 L.P.R.A. sec. 5192(7).

Recuérdese que la Regla 41(b) es parte de un cuerpo de reglas—las Reglas Federales de Procedimiento Civil—que se hicieron para procedimientos civiles en general y no específicamente para los casos de quiebra, los cuales pueden presentar situaciones *sui generis* como la del caso de autos. Por eso la Orden General Núm. 37 específicamente dispone que las reglas federales de procedimiento civil se aplicarán a los procedimientos de quiebra siempre y cuando que no sean incompatibles con la Ley de Quiebras. Esa incompatibilidad que la Orden General quiere prevenir incluye tanto la incompatibilidad con la letra como la incompatibilidad con el espíritu de la Ley de Quiebras. Por eso creemos que la aplicación de la Regla 41(b), como aquí se hizo por el tribunal de

instancia, en forma que derrotaba un crédito con prioridad, sin ni siquiera examinar si éste prevalecería sobre el embargo trabado por Sales, es una aplicación incorrecta de dicha Regla 41 (b).

Recuérdese que la Ley de Quiebras supone que la corte velará por los intereses de los acreedores, 11 U.S.C. sec. 776 (2) ; *Securities & Exchange Commission* v. *U.S. Realty & Improvement Co.*, 310 U.S. 434, 451 (1940) ; 8 Collier, *supra*, sec. 4.12, pág. 444. Como en los procedimientos de *arrangement* el deudor trata de llegar a un arreglo o acuerdo con sus acreedores comunes y no con los asegurados (como lo es Sales) puede entenderse porqué la Corte de Quiebras desestimó el procedimiento, ya que la Corte estimó que de cobrar Sales no quedarían haberes para los acreedores comunes. Pero eso no puede derrotar a un acreedor con prioridad sobre Sales (como lo es la Compañía de Fomento Industrial) ni mucho menos puede servir para negarle su día en corte.

El error del tribunal de instancia se debió a una aplicación estrictamente literal de la Regla 41 (b). Es bien sabido que las figuras rectoras del Derecho en todos los tiempos y en todas las culturas han advertido contra los riesgos de la aplicación estrecha, literal y mecánica de las normas escritas sin atender a las razones que produjeron la norma y a los hechos a los cuales la norma ha de aplicarse. Ya temprano en el desarrollo de la jurisprudencia americana, y precisamente en un caso de quiebra, el Juez Presidente Marshall tuvo la ocasión de señalar que los estatutos se interpretan en su conjunto y no por secciones aisladas. *U.S.* v. *Fisher et al.*, 2 Cranch 358, 386 (1904) ; 2 L.Ed. 305, 313. Como ha señalado Learned Hand una manera de frustrar el propósito de cualquier escrito es interpretarlo al pie de la letra. *Guiseppi* v. *Walling*, 144 F.2d 608, 624 (1949). El Tribunal Superior incidió en error al seguir en su razonamiento un formalismo lógico pero de poca realidad, manera

de adjudicar ya universalmente rechazada. *Romero* v. *International Terminal Co.*, 358 U.S. 354, 377 (1959). No es realmente necesario elaborar sobre esto; basta recordar las muy citadas enseñanzas sobre el particular de Ihering, Cardozo, Holmes, Pound, Ehrlich, Geny, y de los eminentes juristas españoles contemporáneos Castán, Puig-Brutau y Hernández-Gil, entre otros.([10])

El propio Tribunal Supremo de los Estados Unidos, autor de la Regla 41 (b) que aquí nos ocupa tampoco la ha aplicado literal ni mecánicamente, sino que la ha interpretado en forma racional y razonable. Creemos que nuestra posición es compatible y paralela a la que ha adoptado el Tribunal Supremo federal frente a esta Regla 41 (b). Así en *Costello* v. *U.S.*, 365 U.S. 265, 286 *in fine* (1961) el Tribunal expresó que al aplicarse la Regla 41 (b) a situaciones no previstas por dicha regla (como es el caso de autos) es razonable limitar su operación a aquellas situaciones que están comprendidas dentro de la política que informa las causas enumeradas en dicha regla. Como hemos señalado antes, creemos que el caso de autos no cae dentro de las situaciones ni dentro de la política contenida en la Regla 41 (b). Los tribunales, al aplicar dicha regla, han distinguido los casos en que su aplicación cae dentro del *rationale* de la misma y los casos en que por no caer dentro de la política que la informa la desestimación no constituye cosa juzgada para las partes que no han tenido su día en corte. Cf. *Bindley* v. *Metropolitan Life Ins. Co.*, 213 S.W.2d 387 (1948); *Otero* v. *Sandoval*, 292 P.2d 319 (1956); *Eager* v. *Belmore*, 207 P.2d 519 (1949); *Madden* v. *Perry*, 264 F.2d 169 (1959); *Hartford Acc. & Indem. Co.* v. *Levitt & Sons, Inc.*, 24 F.R.D. 230 (1959). Además, una desestimación con perjuicio no es cosa que puede deducirse de una expresión ambigua o poco clara de un tribunal. *Brooks* v. *Sinclair Refining Co.*, 139 F.2d 746

([10]) ". . . [L]a ley sola mata, más el espíritu vivifica." 2 *Corintios* 3, 4.

(1944). V. 2B Barron & Holtzoff, obra citada, sec. 921, págs. 156–162; Anotación, *"Dismissal as Res Judicata,"* 54 A.L.R.2d 473, 478–479.

En el caso de autos, resultaría injusto para la interventora recurrente que su derecho a su crédito como arrendadora, reconocido en el ámbito federal por la propia Ley de Quiebras (11 U.S.C. sec. 104(a)(5)) y en el ámbito estatal por nuestro Código Civil (31 L.P.R.A. sec. 5192(7)), fuese derrotado sin que algún tribunal, ya sea la Corte de Quiebras o el Tribunal Superior, pasase sobre los méritos del mismo. Una determinación como la que hizo el tribunal de instancia, si se sostuviese, no podría ser compatible "con los mejores intereses de los acreedores," ni podría ser "justa y equitativa." *Securities & Exchange Commission* v. *U.S. Realty,* supra, pág. 451.

En cuanto a las relaciones entre la Compañía de Fomento y Ferdinand Sales, el efecto de la orden de desestimación de la petición fue el de colocar la propiedad envuelta sujeta a las aciones ordinarias en los tribunales competentes. *Acme Harvester Co.* v. *Beekman Lumber Co.,* 222 U.S. 300, 310 (1911); *In re Glory Bottling Co. of New York,* 283 Fed. 110, 111–112 (1922). Debe ser claro que al no haber tenido la Compañía de Fomento Industrial una oportunidad de litigar su crédito con prioridad sobre el de Ferdinand Sales en la Corte de Quiebras y en virtud de la desestimación *sua sponte* de la petición de la deudora, la Compañía de Fomento tenía y tiene el derecho a intervenir en el pleito en el Tribunal Superior y de hacer valer sus derechos bajo el Art. 1822 del Código Civil, 31 L.P.R.A. sec. 5192(7).

Regresando a la ley local, el recurrido alega que la Compañía de Fomento no tiene derecho a reclamar contra los bienes muebles de su arrendataria porque en virtud del embargo trabado por él dichos bienes quedaron *sustraídos* y que Fomento no los reclamó dentro de los treinta días que ocurrió la sustracción. El recurrido se ampara en el último

párrafo del citado Art. 1822 del Código Civil, cuyo párrafo dice que "Si los bienes muebles sobre que recae la preferencia hubiesen sido sustraídos, el acreedor podrá reclamarlos de quien los tuviese, dentro del término de 30 días contados desde que ocurrió la sustracción."

No tiene razón el recurrido. El término *sustraídos* tiene varios significados pero el Código utiliza dicho término significando sustraídos o sacados clandestinamente. El propósito de esa disposición es prevenir una práctica ilegal no poco frecuente que consistía en que los deudores sacaban clandestinamente de los almacenes o locales las mercancías y demás bienes muebles cuando tenían noticia o sospecha de que contra ellos se había trabado un embargo. V. García-Goyena, *Concordancias, Motivos y Comentarios del Código Civil Español*, Madrid (1852) Tomo 3, pág. 286; Gullon-Ballesteros, "El Crédito Privilegiado en el Código Civil," en *Anuario de Derecho Civil*, Madrid (1958) Tomo 11, págs. 435, 475.

Por último, argumenta el recurrido que viola la garantía constitucional de la igual protección de las leyes el citado Art. 1822 del Código Civil, 31 L.P.R.A. sec. 5192, el cual establece la clasificación de créditos con relación a los bienes muebles del deudor. A la luz de lo que se ha decidido sobre la facultad de las Asambleas Legislativas para hacer clasificaciones razonables, consideramos frívola esta contención y no la discutiremos.

*Por las razones expuestas en esta opinión se modificará la sentencia dictada por el Tribunal Superior, Sala de San Juan en este caso, en 28 de agosto de 1964 en el sentido de declarar con lugar la demanda de intervención de la Compañía de Fomento Industrial de Puerto Rico y en virtud de ello se condenará a la demandada Samac Motor Corporation a pagar a dicha interventora la suma de $5,867.52 más intereses y costas; declarándose que la Compañía de Fomento Industrial tiene un gravamen preferente al de Ferdinand Sales para su cobro sobre los bienes embargados a la deman-*

*dada, a tenor con lo dispuesto en el citado Art. 1822(7) del Código Civil.*